UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASIAN FOOD SERVICE, INC.,

       Plaintiff,                                   No. 18-13454

v.                                                    Honorable Nancy G. Edmunds

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

       Defendant.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [19]**

In this insurance dispute, Plaintiff Asian Food Service, Inc. claims that Defendant Travelers Casualty Insurance Company of America breached the insurance policy it issued to Plaintiff when it refused to make certain payments after a fire. Before the Court is Defendant's motion for partial summary judgment. (Dkt. 19.) Plaintiff opposes the motion. (Dkt. 21.) Defendant has filed a reply. (Dkt. 22.) Defendant also filed a sur-reply, after being granted leave by the Court, in response to an affidavit filed by Plaintiff after briefing was complete. (*See* dkts. 23, 24, 25.) The Court finds that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument. For the reasons discussed below, the Court DENIES IN PART and GRANTS IN PART Defendant's motion.

1

I. **Background**

This insurance dispute arises out of a fire that took place at Plaintiff's buffet restaurant called Tokyo Buffet Lounge in Southfield, Michigan on August 6, 2017. On October 16, 2017, Plaintiff submitted its proof of loss in the amount of $569,424.13 to Defendant. (Dkt. 21-3.) Defendant acknowledged receipt of this proof of loss and ultimately paid $302,626.03 for the loss and damage arising from the fire. On October 2, 2018, Plaintiff brought this suit in state court, but Defendant removed it to this Court based on diversity jurisdiction. Plaintiff believes it is entitled to 1) the cost of the replacement of eight buffet tables, 2) the unpaid portion of the cost of certain food items (crab legs), and 3) the cost of defending a lawsuit brought by a third-party against Plaintiff for cleaning and related services. (Dkt. 21-2, PgID 589.) Defendant concedes there is an issue of material fact regarding the food items but moves for summary judgment on the remaining issues—the cost of replacing the buffet tables and defending the third-party lawsuit.

A. **Buffet Tables**

Plaintiff seeks payment for the replacement of eight hot and cold buffet tables, including their five condensing units and thirty-two plate dispensers (collectively referred to as "buffet tables"), which total approximately $62,000. Defendant notes that as part of the claim adjustment, it paid Plaintiff $31,709.22 to clean its business personal property, including these items.[1] (Dkt. 19-2, PgID 207.) According to Plaintiff, however, the buffet tables were damaged beyond repair due to water

---

[1] The line item repair estimate attached to Defendant's reply states that the amount paid for cleaning was $31,805.46. (Dkt. 22-2, PgID 806.)

2

intrusion and mold growth.  In support of this assertion, Plaintiff has provided the affidavit of its manager, Mr. Paul He, along with a few photographs of some the buffet tables that purportedly show mold.  (*See* dkt. 21-5, PgID 782-83.)  In relevant part, Mr. He attests in his affidavit that he is a certified professional food manager, a designation awarded to individuals passing a written examination of their knowledge of food safety and sanitation.  (*Id.* at PgID 598.)  Further, he states that "the Eight (8) Hot and Cold Buffet Tables (which included 5 Condensing Units and 32 inch Plate Dispensers) were not reparable as they are custom-made food service stations (with electrical and water hook-ups) which are made of wood and suffered water damage and ensuing mold growth after the fire of August 6, 2017."  (*Id.* at PgID 600.)  Mr. He testified to this same effect during his deposition.  (*See* dkt. 19-5, PgID 256.)  He asserted that it was a "Health Department" requirement that any item that has mold be replaced.  (*Id.*)

Defendant points, however, to the testimony of Mr. Edward Mandell, the owner of ASD Waterworks, which was hired by Plaintiff after the fire as the restoration contractor to repair the damage to the property.  Mr. Mandell stated during his deposition that even though Mr. He wanted a quote on how much it would cost to replace the buffet bars, there was "basically nothing . . . wrong with them.  They can all be wiped down, cleaned and sanitized . . . ."  (Dkt. 19-3, PgID 219.)  He further stated that "if there were any concerns in that restaurant, it was prior to the, the flood, I'm sorry, the flood and the fire.  Based on what I saw underneath the buffet bars in the pictures I took."  (*Id.*)

3

Defendant also points to the affidavit of Mr. Kenneth Johnson, who was hired by Plaintiff after the fire to assist with the evaluation of personal property that had been damaged in the fire and make an inventory of all items he determined were a total loss. Mr. Johnson opined in his first affidavit, which was attached to Defendant's motion for summary judgment, that based upon his years of experience, knowledge, and training, it was his personal opinion that the buffet tables were not a total loss and could have been cleaned and/or restored. (Dkt. 19-6, PgID 264.) In its response, Plaintiff stated that "Mr. Johnson was out-of-state at the writing of this response, but it [sic] anticipated that he will provide an affidavit clarifying the confusion in his Travelers' affidavit." (Dkt. 21, PgID 577.) Mr. Johnson's second affidavit, filed by Plaintiff after briefing of this motion was complete, states, in relevant part, as follows:

> 8. Given that I did not record an inventory of non-total loss personal property, I based my professional opinion in Paragraph 16 of my First Affidavit [that the buffet tables, condensing units, and plate dispensers were not a total loss] on the fact that personal property items not contained on my Total Loss Inventory necessarily meant that they could have been repaired and/or restored (as I set forth in Paragraph 17 of my First Affidavit).
> 9. I have since been informed that the three categories of Paragraph 16 Items are restaurant equipment that either were affixed to the floor of the Insured's premises or that contained internal electronic circuitry or plumbing elements.
> 10. I do not have any personal knowledge of the truth of the information of which I [sic] informed, which I describe in Paragraph 9 of this affidavit (i.e., that the three categories of items listed in Paragraph 16 of my First Affidavit are restaurant equipment that either were affixed to the floor or that contained internal electronic circuitry or plumbing elements).
> 11. However, to the extent that the information in Paragraph 9 of this Affidavit is true, I would not have examined the Paragraph 16 Items, nor included the Paragraph 16 Items on my Total Loss Inventory in conjunction with my work performed for the Insured prior to this litigation. I was never asked by any party or non-party to this litigation to review affixed restaurant equipment.

4

> 12. Furthermore, to the extent the information in Paragraph 9 is true, I would not have evaluated the Paragraph 16 Items in conjunction with my work performed for the Insured prior to this litigation.
> 13. As such, to the extent that the information in Paragraph 9 is true, I retract my professional opinion set forth in Paragraph 16 of my First Affidavit and instead state that I have no professional opinion regarding the repairability and/or replaceability of these items.

(Dkt. 23, PgID 815-16.)

### B. The Lawsuit Brought by a Third-Party

Plaintiff also seeks the cost of defending a lawsuit brought by ASD WaterWorks ("ASD"). Plaintiff hired ASD after the fire as the restoration contractor to repair the damage to the property. (Dkt. 19-7.) After ASD completed its work, it submitted a final bill of the remaining balance of $96,473.43. Plaintiff rejected this bill because it was dissatisfied with the work and asserted that ASD had failed to completely remove the soot from the premises. ASD filed suit against Plaintiff in Oakland County Circuit Court, alleging a number of state law claims, including breach of contract due to Plaintiff's failure to pay the total bill. (Dkt. 19-8.) Plaintiff asserts that it informed Defendant of the lawsuit, but Defendant chose not to intervene. Eventually, Plaintiff agreed to settle the lawsuit for $42,000.00. Plaintiff now seeks that amount, as well as the attorney fees it spent in its defense of that lawsuit in the amount of $19,951.57, for a total of $61,951.67.

### II. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

Because this case is before the Court based on its diversity jurisdiction, the Court must apply the substantive law of Michigan. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Where an issue of state law has not been decided by the Michigan Supreme Court, the Court will determine how the Michigan Supreme Court would decide the issue were it faced with it. *Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2006) (citations omitted). The Court will heed the decisions of Michigan's appellate courts except where the Court is persuaded that the Michigan Supreme Court would not so decide, and the Court may consider applicable dicta of the Michigan Supreme Court. *See id.*

When applying Michigan law to insurance-coverage matters, the Court gives the words of the insurance policy their plan and ordinary meaning. *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 505 (Mich. 1995). If a term is ambiguous, the ambiguity is to be construed against the insurer. *Id.* at 504. Summary judgment is appropriate if the applicable policy terms are unambiguous. *Mahnick v. Bell Co.*, 662 N.W.2d 830, 833 (Mich. Ct. App. 2003).

### III. Analysis

#### A. The Cost of Replacing the Buffet Tables

##### 1. Summary Judgment

Defendant argues Plaintiff is not entitled to the cost of replacing the buffet tables because pursuant to the insurance policy, it was only obligated to pay the lesser of the cost to repair or replace the damaged items, and it has already paid the cost of cleaning these items. Plaintiff responds by arguing that the buffet tables were damaged beyond repair due to mold and, thus, Defendant was obligated to pay the cost of replacement.

Defendant notes that the only expert testimony in the record supports the repairability of the buffet tables. Defendant argues that the presence of mold and the issue of whether mold renders the buffet tables unrepairable requires expert testimony. Defendant does not, however, cite to any relevant caselaw in support of this proposition. As a general matter, under Michigan law, a party is not required to rebut expert testimony with its own expert testimony. *See Uganski v. Little Giant Crane & Shovel, Inc.*, 192 N.W.2d 580, 588 (Mich. Ct. App. 1971). "'[N]o trier or triers of fact are bound to accept opinion testimony, however expert and authoritative, as

they proceed to determine issues of fact duly committed to them for finding or verdict.'" *Id.* at 588 (quoting *Vial v. Vial*, 120 N.W.2d 249, 250 (Mich. 1963)). Where the factfinder is able to weigh and evaluate the evidence based on his or her ordinary experience, there is no need for expert testimony to survive summary judgment.

Here, Plaintiff relies on the photographs of the buffet tables, which allegedly show mold, and the testimony of Mr. He, who has testified that the buffet tables have mold and need to be replaced. The Court finds that this evidence is sufficient to create a genuine dispute of material fact on the issue of whether the buffet tables are repairable.[2] Thus, Plaintiff's claim with regard to the buffet tables survives Defendant's motion for summary judgment.

### 2. Mr. Johnson's Second Affidavit

In its sur-reply, Defendant argues that the Court should strike Mr. Johnson's second affidavit as a sham affidavit. "Under the sham affidavit doctrine, after a motion for summary judgment has been made, a party may not file an affidavit that contradicts his earlier sworn testimony." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (citation omitted). "If the affidavit directly contradicts prior sworn testimony, it

---

[2] Defendant argues that Mr. He is not qualified to testify as an expert on mold, and that his testimony regarding any Health Department requirements is speculative and inadmissible opinion testimony. The crux of Defendant's arguments, however, appears to go to the weight, and not the admissibility, of Mr. He's testimony. And to the extent Defendant relies on the case of *Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 539-40 (N.D. Ohio 2015), regarding the qualifications needed to provide an opinion on mold, that case is inapposite. In that products liability suit, the court discussed those qualifications in the context of considering the defendant's motion to exclude the testimony of the plaintiff's expert. *See id.* Here, Mr. He has personal knowledge of the property and can testify as to the condition of the property as he perceives it.

8

should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* at 622 (internal quotation marks and citation omitted). If the affidavit is not directly contradictory, "it should be stricken if it is an attempt to create a sham fact issue." *Id.*

Here, Mr. Johnson explains that he is providing a second affidavit because he has been given new information—that the buffet tables, condensing units, and plate dispensers are either affixed to the floor of the premises or contain electric circuity or plumbing elements. (*See* dkt. 23, PgID 815.) And even if this justification is not persuasive, while Mr. Johnson retracts part of the professional opinion he rendered in his first affidavit, he simply states that he no longer has a professional opinion about the repairability of these items to the extent the information he was provided is true. (*See id.* at PgID 816.) Moreover, Mr. Johnson's second affidavit does not create a sham fact issue. The Court has found that there is other evidence in the record—the photographs and testimony of Mr. He—sufficient to create an issue of material fact as to the repairability of the buffet tables irrespective of Mr. Johnson's second affidavit. Thus, there is no need to strike the affidavit.

### B. The Cost of Defending the Lawsuit Brought by a Third-Party

Defendant argues that it had no obligation to defend or indemnify Plaintiff in the lawsuit brought by ASD for three reasons: 1) Plaintiff never tendered its defense; 2) even if it had, the insurance policy does not cover defense of the suit because it is not an occurrence, does not allege property damage, and contractual liability is excluded; and 3) Plaintiff voluntarily settled the lawsuit without Defendant's consent. Plaintiff appears to concede this point, because it responds by arguing that it is not seeking

defense and indemnity but is rather seeking the amounts expended to defend and settle the lawsuit as consequential damages arising from Defendant's breach of contract.

As Plaintiff acknowledges, damages for a breach of contract are "generally limited to the monetary value of the contract." *See Parmet Homes, Inc. v. Republic Ins. Co.*, 314 N.W.2d 453, 457 (Mich. Ct. App. 1981). Plaintiff notes, however, that Michigan follows the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854), that "the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *See Kewin v. Massachusetts Mutual Life Ins. Co.*, 295 N.W.2d 50, 52-53 (Mich. 1980). Plaintiff argues that the cost of defending the lawsuit brought by ASD was within contemplation of the parties at the time the contract was made. The Court disagrees.

Here, the insurance policy states that Defendant will pay for "direct physical loss of or damage" to covered property caused by or resulting from a covered cause of loss. (*See* dkt. 19-10, PgID 404.) Thus, it would be farfetched to say that the amount expended to defend a lawsuit brought by a third-party against Plaintiff for its failure to pay for remediation services was within the parties' contemplation at the time the contract was made. The Sixth Circuit, applying Michigan law, has found that this language—"direct physical loss or damage"—encompasses tangible, physical losses, not economic losses. *See Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012). Thus, the cost of settling and defending the lawsuit falls outside the ambit of the insurance policy. Moreover, Michigan courts have

expressly rejected the argument that attorney fees may be recovered in a breach of contract action due to the foreseeability test articulated in *Hadley v. Baxendale* and have instead reaffirmed the "American rule" that "attorney fees are recoverable only when expressly authorized by statute, court rule, or a recognized exception." *See Burnside v. State Farm Fire & Casualty Co.*, 528 N.W.2d 749, 753 (Mich. Ct. App. 1995). In sum, Plaintiff is not entitled to the cost of settling and defending the lawsuit brought by ASD as a matter of law. Defendant's motion for summary judgment is granted as to this claim.

### IV.   Conclusion

For the above-stated reasons, Defendant's motion for partial summary judgment is DENIED IN PART and GRANTED IN PART. More specifically, Defendant's motion is denied with regard to the cost of the replacement of the buffet tables but granted with regard to the cost of defending the third-party lawsuit.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 26, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 26, 2020, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

11